UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN CORTEZ HOWELL,

        Petitioner,

vs.

KENNETH ROMANOWSKI,

        Respondent.

_____/

Civil Action No. 13-CV-13344

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING PETITION'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree premeditated murder, M.C.L.A. 750.316(1)(a); mutilation of a dead body, M.C.L.A. 750.160; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons that follow, the Court shall deny the application.

## I. Introduction

The facts in this matter, as recited by the Michigan Court of Appeals, are as follows:

> Defendant was convicted of killing David Morgan (hereafter the "victim") after selling cocaine to him in August 2010, and then dismembering his body and placing his body parts in different areas in Detroit. The victim's head was never located, but his identity was established through fingerprints. Defendant was linked to the killing by statements made to MF [Monique Foster], the mother of his child, details of which were corroborated by other prosecution witnesses. Defendant was tried jointly with Aaron Coleman, but the trial court granted Coleman's motion for a directed verdict at trial.

>                         *   *   *

>       According to defendant's statements to MF, the victim purchased crack cocaine from defendant, and defendant directed the

victim to a nearby house shortly before defendant went to the house and shot the victim. Defendant also told MF that he killed the victim and dismembered his body because rival drug sellers down the street were making more money than defendant was making. The evidence showed that most of the victim's body parts were found near houses known for drug use. This evidence supports an inference that defendant killed the victim, dismembered his body, and placed the body parts in strategic locations as part of a plan to discourage drug users from acquiring their drugs from other sellers in the same area. Although defendant argues that it would make little business sense for him to kill one of his own drug customers, it was not necessary that the prosecutor prove that defendant exercised good business judgment in order to establish a motive. A motive is "the inducement for doing some act; it gives birth to a purpose." In any event, the jury could have determined that defendant decided to accept the loss of one customer in exchange for dissuading several other potential customers from going to a rival drug competitor.

MF's testimony indicates that defendant told her that he directed the victim to a nearby house, which other evidence indicated was an abandoned house, and then shortly afterward defendant went to that house and shot the victim. While this case does not involve evidence that defendant moved the victim, evidence that defendant was involved in directing the victim to a more secluded place, where the victim was then killed, provides additional support for a finding of premeditation. In addition, MF's testimony that defendant told her that he "walked in and he shot the man" supports an inference that defendant had an opportunity to think about his actions as he walked to the house, which provided him with sufficient time to consider his actions. Although the cause of death could not be determined and no evidence of a gunshot wound was detected during the autopsy, the victim's head was never recovered. The jury could have inferred that defendant shot the victim in the head and hid the head to conceal evidence of a cause of death. "[A] defendant's attempt to conceal the killing can be used as evidence of premeditation."

Evidence was also presented that defendant attempted to prevent MF from testifying. According to MF's testimony, defendant told her in a recorded telephone conversation from jail that she could avoid saying anything by taking the "5th Amendment." A jury may infer consciousness of guilt from a defendant's attempts to conceal involvement in a crime.

*People v. Howell,* 2013 WL 376056, at **1-3 (Mich. App. Jan. 31, 2013) (citations omitted). The

Michigan Court of Appeals affirmed petitioner's conviction, *see id.,* and the Michigan Supreme

Court denied leave to appeal. *See People v. Howell*, 494 Mich. 871 (2013).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. Howell's conviction for first-degree murder should be reversed as the prosecution presented constitutionally insufficient evidence of the requisite premeditation and deliberation.

II. Howell was denied due process to a fair trial as the trial court reversibly erred when it permitted the prosecution to introduce evidence of a separate transaction unrelated to the charges at bar, which was irrelevant and inadmissible under Mich. R. Evid. 402. Even if the evidence was relevant, it nevertheless should have been excluded under Mich. R. Evid. 403, as its probative value was greatly outweighed by its unfairly prejudicial effect and likelihood to confuse the issues and mislead the jury. Trial counsel rendered ineffective assistance of counsel for failing to object to this evidence.

III. The trial court abused its discretion by allowing Sergeant Firchau's testimony despite a lack of foundation or showing of personal knowledge of the existence of a "rival drug house," in violation of Mich. R. Evid. 602 and 702.

IV. Where Howell's defense theory was antagonistic and irreconcilable to the theory of his codefendant, he was denied a fair trial by the trial court's refusal to either sever Howell's trial or seat a jury separate from that of his codefendant; counsel was ineffective for failing to request a separate jury for Howell. U.S. Const. amend VI, XIV; Mich. Const. art. I §§ 17, 20.

V. The trial court reversibly erred in allowing evidence of the out-of-court statements made by Monique Foster, as those statements did not fall within the hearsay exception for prior consistent statements under Mich. R. Evid. 801(D)(1)(B).

## II.  Standard of Review

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

3

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7)

4

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Harrington*, 131 S. Ct. at 785 (internal quotation marks omitted). Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v.*

*Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.   28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Discussion

### A.  Claim # 1: Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence of premeditation and deliberation to sustain his conviction for first-degree premeditated murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  On habeas review for sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "Circumstantial evidence alone is sufficient to support a conviction, and '[i]t is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt.'" *United States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999), *quoting  United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).  On habeas review, the state court's rejection of a sufficiency-of-the-evidence challenge will not be disturbed unless is "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The prosecutor must prove that a defendant's intentional killing of another was

6

deliberated and premeditated in order to obtain a conviction for first-degree murder. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). "Circumstantial evidence demonstrating premeditation includes, but is not limited to (1) the prior relationship of the parties, (2) defendant's actions before the killing, (3) the circumstances, including the wound's location, of the killing, and (4) defendant's conduct after the killing." *Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004).

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look." *Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002) (internal quotation marks omitted). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596.

Sufficient evidence of premeditation and deliberation was presented at petitioner's

trial.  Petitioner informed his girlfriend that he directed the victim to an abandoned house and shot

him because rival drug sellers in the neighborhood were making more money than petitioner.

Petitioner's suggestion that he had planned on killing the victim supports a finding of premeditation.

*See People v. Bauman,* 332 Mich. 198, 201-05 (1952), as does evidence that petitioner moved the

victim to an abandoned house before shooting him.  *See People v. Johnson,* 460 Mich. 720, 733

(1999).  Petitioner's statement that he walked into the abandoned house and shot the man suggests

an ambush, which also supports a finding of premeditation and deliberation.  *See Marsack v. Howes,*

300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).  Although the cause of death was never determined,

the jury could have inferred from the fact that the victim's head was never recovered that petitioner

shot the victim in the head and hid the head to conceal evidence of the cause of death.  Under

Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of

the victim's body, such as the head.  *See Lundberg v. Buchkoe,* 338 F.2d 62, 69 (6th Cir. 1964).  The

fact that petitioner both shot the victim and then dismembered his body supports a finding of

premeditation, because it would show that petitioner had an opportunity between each method of

assault to reflect upon his actions.  *See People v. Kelly,* 231 Mich.App. 627, 642 (1998).  There was

also evidence that the night before the victim's body was found, Jermaine Overman went with

petitioner and his co-defendant to an abandoned house at the direction of either man to find scrap

metal, when Overman saw the head of a deceased African-American male partially covered by a

blanket.  The jury could infer that this was the body of the victim. Although Overman became

agitated, neither petitioner nor the co-defendant was upset by the sight. (Tr. 4/19/11, pp. 156-58,

193).  Petitioner's calm demeanor after the victim's murder supports an inference of premeditation.

*See Houston v. Dutton*, 50 F.3d 381, 383 (6th Cir. 1995).  Finally, petitioner asked his girlfriend to

testify falsely on his behalf.  This could also establish premeditation and deliberation as it suggests a consciousness of guilt.  Because the evidence was sufficient to convict petitioner of first-degree murder, petitioner is not entitled to relief on his first claim.

### B.  Claims # 2, # 3, and # 5: Evidentiary Claims

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court.  *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

In his second claim, petitioner argues that he was prejudiced by the prosecution's introduction of evidence regarding a separate shooting incident that involved petitioner's brother and Jermaine Overman on November 5, 2010, which resulted in the death of their friend, Kevin Williams.  Petitioner argues that this evidence was irrelevant and inadmissible under M.R.E. 401, 403, and 404.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009).  To the extent petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he is not entitled to relief because this claim is non-cognizable on habeas review.  The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a criminal defendant's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh*

9

*v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on his second claim.

In his third claim, petitioner argues that the trial court erred in admitting Sergeant Firchau's testimony in which he characterized 2281 Hale Street as the "address of the competing drug location of where most of the body parts were found."  Petitioner claims that Sergeant Firchau's testimony lacked an adequate foundation because it was not based on his personal knowledge. Petitioner is not entitled to habeas relief on this claim because "[t]he adequacy of the foundation for the admission of evidence is governed by the state evidence rules, not the federal Constitution." *Rhea v. Jones*, 622 F. Supp. 2d 562, 590 (W.D. Mich. 2008).

In his fifth claim, petitioner contends that the trial court improperly admitted out-of-court statements made by Monique Foster to his mother, claiming that they were not admissible as an exception to the hearsay rule, because they did not qualify as prior consistent statements under M.R.E. 801(D)(1)(B).  The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding.  *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).

There is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988).  As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970).  Because Ms. Foster testified at petitioner's trial and was subject to cross-examination, the admission of her out-of-court statements to petitioner's mother

10

did not violate petitioner's Sixth Amendment right to confrontation.  Petitioner is not entitled to habeas relief on his fifth claim.

### C.  Claim # 4:  The Separate Trial Claim

Petitioner next contends that he was deprived of a fair trial when the judge refused to sever his trial from that of his co-defendant, Aaron Coleman.  Petitioner claims that he should have been tried separately because his and Coleman's defenses were mutually antagonistic in that while petitioner claimed that he was not involved in the shooting or dismemberment, the co-defendant's defense was that he was merely present during the crime and pointed the finger at petitioner.

A criminal defendant is not entitled to a separate trial merely because he might have had a better chance for acquittal in a separate trial.  *See Zafiro v. United States*, 506 U.S. 534, 540 (1993).  Nor does a criminal defendant have a right to a separate trial merely because he and a co-defendant present antagonistic defenses.  *See Stanford v. Parker,* 266 F.3d 442, 458 (6th Cir. 2001). A court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Habeas relief is unavailable as to this claim because petitioner has failed to show that he and his co-defendant had mutually antagonistic defenses.  The co-defendant's defense that the evidence established at most that he was merely present when the crime took place was not antagonistic to petitioner's defense that he did not commit the crime.  The jury still could have believed either theory based on the evidence presented.  *See United States v. Carter*, 760 F.2d 1568, 1574 (11th Cir. 1985).  Further, there has been no showing that Coleman's defense was "predicated

11

solely on" petitioner's guilt. *United States v. Harris,* 9 F. 3d 493, 501 (6th Cir. 1993). Coleman's defense theory was that he was not involved in the shooting regardless of whether the jury believed Monique Foster's testimony.  The jury was free to believe that petitioner was not involved in the murder and that Coleman's mere presence at the crime scene, regardless of who committed the murder, was insufficient to convict him as an aider and abettor.  Petitioner is not entitled to relief on his fourth claim.

### D.  Claims # 2 and # 4: Ineffective Assistance of Counsel

As part of his second and fourth claims, petitioner alleges the ineffective assistance of trial counsel.  To show that he was denied the effective assistance of counsel, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

12

Petitioner contends that his trial counsel was ineffective for failing to object to the admission of the testimony concerning the unrelated shooting involving his brother, in which Kevin Williams was shot.  The Michigan Court of Appeals rejected the underlying claim, finding that the evidence of the unrelated shooting was relevant to rebut the defense theory that Monique Foster was fabricating her testimony because the shooting led petitioner's mother to question petitioner about the whereabouts of the gun used in this shooting, to obtain information from Foster regarding what petitioner told her about the case, and ultimately for petitioner's mother to report to the police what she knew about the case.  The Michigan Court of Appeals further concluded that this evidence was not more prejudicial than probative in light of the fact that petitioner was not linked to the shooting of Kevin Williams.  Finally, the Michigan Court of Appeals concluded that the admission of this evidence did not violate M.R.E. 404(b) because it was used only to explain the chain of events which led to the police to question Foster, and not for "an improper character purpose."  *People v. Howell*,  2013 WL 376056, at *4.

This Court "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals ruled that this evidence was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008).

In his fourth claim, petitioner contends that his trial counsel was ineffective for agreeing to a joint trial with the co-defendant.  Because the co-defendant's defense was not mutually antagonistic with petitioner's defense, counsel was not ineffective for agreeing to a joint trial. *See*

*Lang v. Gundy,* 399 F. App'x 969, 975-76 (6th Cir. 2010). Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### IV. Conclusion

For the reasons stated above, the Court shall deny petitioner's application for a writ of habeas corpus. The Court shall also decline to issue a certificate of appealability, as petitioner has

failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Leave to appeal *in forma pauperis* is denied as well, as any appeal in this matter would be frivolous. Accordingly,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis.*

S/ Bernard A. Friedman_____
Dated: May 12, 2014                    BERNARD A. FRIEDMAN
      Detroit, Michigan           SENIOR UNITED STATES DISTRICT JUDGE

14